OPINION
Appellants, Lawrence P. Yob, Bath Transport, Inc., Express Companies of America, LTD., and Central Transport Inc., appeal a May 19, 1999 decision of the Trumbull County Court of Common Pleas, in a wrongful death action filed by appellees, Marie V. Lynch, Administratrix of the Estate of Stephen M. Wiley, and Susan Reese, Administratrix of the Estate of Justin L. Reese. The following facts are relevant to a determination of this appeal.
A fatal accident occurred on the Ohio Turnpike on October 11, 1996. A tractor-trailer, operated by Lawrence P. Yob, crossed the median and struck an automobile being driven by Justin L. Reese, in which Stephen M. Wiley was a passenger. Reese and Wiley died in the accident. The tractor portion of the rig was owned by Yob's employer, Bath Transport, Inc. and its owner, Express Companies of America, Ltd. The trailer portion of the rig was owned by a separate entity, whose identity the parties dispute. Ownership of the trailer, however, is not a critical issue in this case.
On January 24, 1997, appellees filed a complaint in Trumbull County Court of Common Pleas against Yob, the owners of the tractor-trailer, and the Ohio Turnpike Commission for wrongful death. Appellees amended their complaint on June 17, 1998, to include both insurance companies. They also included a claim for declaratory judgment. On the same date, appellees filed a motion for summary judgment as to their complaint for declaratory judgment. It is undisputed that the insurance policy on the tractor owned by Bath Transport, Inc. had a limit of $1 million. This tractor policy also had an MCS-90 endorsement which stated that it had $2 million in potential coverage. The trailer had an insurance policy with a liability limit of $2.5 million, and it also had an MCS-90 endorsement indicating $2.5 million of potential coverage.
An MCS-90 endorsement is mandated by Section 29 of the Motor Carrier Act of 1980, 49 U.S.C. § 10927, and requires the insurer to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles." The MCS-90 endorsement derives from the financial responsibility regulations promulgated by the Secretary of Transportation pursuant to the Motor Carrier Act of 1980. The regulations require motor carriers to obtain minimum levels of security to protect the public, either in the form of insurance or a surety bond.
The questions for the trial court involved which of the foregoing coverages and endorsements were applicable to the underlying accident, and in what amounts. Upon summary judgment, the trial court determined that the $1 million policy on the tractor was available to the estates, but that the MCS-90 endorsement on the tractor, which had a stated limit of $2 million, was actually the result of a mutual mistake of fact and should have read $1 million. The trial court also held that the $1 million MCS-90 endorsement was not excess coverage but would have been available had the primary coverage not been available.
Additionally, the trial court held that the $2.5 million trailer policy was not available because a "trucker" was not an insured under the terms and conditions of the policy. The court concluded, however, that the $2.5 million MCS-90 endorsement on the trailer was applicable and coverage was available as primary insurance, otherwise a failure of coverage would result. The trial court explained:
 "The Court in making this finding relies upon Powers v. Myers, (1995), 101 Ohio App.3d 504, which held that ICC endorsements would negate exclusions found in the underlying policy inconsistent withe (sic) the ICC endorsements. Since the MCS-90 endorsement allows coverage, the underlying language of the policy can not be used to negate that coverage and this Court finds it does apply."
 Thus, in summary, the trial court determined that the underlying insurance policy on the tractor in the amount of $1 million was available, in addition to the MCS-90 endorsement on the trailer up to its $2.5 million limit. Additionally, the trial court denied the trailer owners' motion for summary judgment on appellees' negligence claims. The court ordered the case to proceed to trial on the issue of damages, and Civ.R. 54(B) language was included in the judgment entry.
Appellants timely filed a notice of appeal and have now set forth the following assignments of error:
 "1. The trial court incorrectly granted plaintiffs partial summary judgment in determining that the trailer owners' MCS-90 endorsement provided coverage for plaintiffs' claims.
 "2. The trial court incorrectly denied defendants' motion for summary judgment concerning plaintiffs' purported negligence claims against the trailer owners."
In their first assignment of error, appellants contend that the trial court erred by granting, in part, appellees' motion for summary judgment and determining that the trailer owners' MCS-90 endorsement provided coverage for appellees' claims. It is appellants' assertion that since the underlying policy provided no coverage in this case because neither the owner of the tractor nor the driver fit the definition of "insureds," it was error for the trial court to conclude that the MCS-90 endorsement somehow created coverage by broadening the definition of an "insured." We agree.
Under the language of Section II, part A, of the underlying trailer policy, coverage was provided to an "insured" for bodily injury or property damage caused by an accident. Thus, by implication, someone who was not an "insured" was not covered. While we agree with appellees' representation of the law that insurance on both the tractor and trailer portions of a truck are applicable in an accident regardless of whether the tractor or trailer was physically involved in the accident,Contrans, Inc. v. Ryder Truck Rental, Inc. (C.A.3, 1987), 836 F.2d 163,165, that issue cannot be reached until it is first determined who is an "insured." The trial court determined that a "trucker," such as Yob, as driver, or Bath Transport, as tractor owner, were not "insureds" under the underlying trailer policy. This determination is supported by the language of the trailer policy which states, in part, that any "trucker," or his agents or employees, is not an insured, and this issue has not been appealed. Then, after specifying who is and who is not an insured, the policy lists thirteen exclusions in Section II, Part B, none of which are applicable to this case.
The trial court, however, then held that even though Yob and Bath Transport were not "insureds" under the underlying trailer policy, somehow the MCS-90 endorsement on the trailer made them insureds for purposes of that endorsement. We disagree with that conclusion. The express language of the MCS-90 endorsement, which governs determination of this appeal, states, in relevant part:
 "In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of * * * the Motor Carrier Act of 1980 * * *." (Emphasis added.) See 49 C.F.R. § 387.15.
 By the plain language of the MCS-90 endorsement itself, there must be a final judgment against an "insured" to trigger its provisions. In the case sub judice, none of the parties who can potentially be held liable for wrongful death are "insureds." Hence, the MCS-90 endorsement on the trailer is not available to appellees.
This conclusion has support in case law from various federal courts. In John Deere Ins. Co. v. Truckin' USA (N.D. Tex, 1996), No. 3:95-CV-1556-D, 1996 U.S. Dist. LEXIS 22231, aff'd (C.A. 5, 1997),122 F.3d 270, the court stated:
 "The `insured' referred to by the endorsement necessarily refers only to the named insured under the Policy * * *. [T]he purpose of requiring motor carriers to maintain insurance that includes the MCS-90 endorsement `is to create additional incentives to motor carriers to maintain and operate their vehicles in a safe manner and to assure that motor carriers maintain an appropriate level of financial responsibility for motor vehicles operated on public highways.' 49 C.F.R. § 387.1. The policy behind the endorsement would not be affected by requiring an insurer to pay the final judgments against a motor carrier that it has not contracted with as its insured, and that would be required to maintain its own insurance that meets the minimum standards set forth by federal law. [The insurer] has demonstrated, as a matter of law, that Copp Trucking and Transport do not qualify as `insureds' under any provision of the Policy. As such, there is no set of facts under which John Deere could become liable to Copp Trucking or Transport by virtue of the MCS-90 endorsement." (Emphasis added.) Id. at 7.
Similarly, in Progressive County Mut. Ins. Co. v. Carway (1997),951 S.W.2d 108, the court held:
 "There is not a single case holding that a driver/employee, who was not an insured under the plain terms of the policy, was nonetheless covered. In fact, the cases hold just the opposite.
"* * *
 "It is one thing to hold that a motor carrier is absolutely liable — based on the Interstate Commerce Act — for injuries resulting from the negligent operation of vehicles leased to it, but it seems an unjustified and illogical leap to hold that an insurance company — whose sole obligation rests on contract — should be bound to pay a judgment for others who are not mentioned in the ICC insurance regulation (49 C.F.R. § 1043.1), and who are specifically excluded by the language of the policy." Id. at 114.
The Tenth Circuit Court of Appeals has stated:
 "The [MCS-90] endorsement itself does not define the term `insured,' but we are satisfied `that is still a matter governed by the express provisions of the body of the contract.' National Mut. Ins. Co. v. Liberty Mut. Ins. Co., 196 F.2d 597, 600 (D.C. Cir.), cert. denied, 344 U.S. 819, 97 L.Ed. 638, 73 S.Ct. 15
(1952)." Campbell v. Bartlett (C.A. 10, 1992), 975 F.2d 1569, 1581.
Even the First District Court of Appeals of Ohio has stated:
 "The obligations of [the insurer] under the general liability and uninsured-motorist provisions of the policy arise only with respect to an insured as that term is defined for purposes of the policy. Similarly, the rights and obligations arising under the [MCS-90 Endorsement] are contingent upon the entry of a final judgment against an insured." Powers v. Meyers (1995), 101 Ohio App.3d 504, 511.
 Based upon the foregoing opinions, we hold that an MCS-90 endorsement cannot be interpreted to, in effect, add "insureds" to an underlying insurance policy who are not "insureds" as that term is defined in the policy itself. Hence, in the instant cause, since neither Yob nor Bath Transport were "insureds" in the underlying trailer policy, the MCS-90 endorsement could not magically transform them into "insureds" under the endorsement. Appellants' first assignment of error is sustained.
In their second assignment of error, appellants assert that the trial court erred in denying their motion for summary judgment regarding appellees' negligence claim against the trailer owners. We agree.
A review of the record reveals the following. The trailer owners filed a motion for summary judgment in the trial court arguing that only Yob's employer, Bath, could be held vicariously liable for his negligent conduct. They also argued that no vicarious liability attached to them as a matter of law because Yob was operating the tractor-trailer pursuant to Bath's ICC authority. In response to the motion for summary judgment, appellees submitted a memorandum in opposition in which they conceded that respondent superior did not apply. Instead, they were pursuing their claim against the trailer owners solely on the basis that the trailer owners, by operation of law, must provide excess insurance coverage pursuant to the MCS-90 endorsement.
Based upon our decision regarding appellants' first assignment of error, it is clear that the trial court should have granted the trailer owners' motion for summary judgment. Hence, appellants' second assignment of error is also sustained.
Accordingly, the judgment of the trial court is reversed and the matter remanded for further proceedings consistent with this opinion.
 ________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J., CHRISTLEY, J., concur.