DECISION.
{¶ 1} Plaintiff-appellant, the Montgomery Towne Homeowners' Association ("Montgomery Towne"), brought this action seeking declaratory and injunctive relief against defendants-appellees, Edward Greene and Priscilla Greene. Montgomery Towne alleged that the Greenes had installed glass-block windows in their condominium unit in violation of Article X of Montgomery Towne's Declaration of Condominium, which required prior approval of any changes to the exterior of their unit. Upon cross-motions for summary judgment, the trial court entered judgment for the Greenes. With the facts construed most strongly in favor of the Greenes, the only conclusion to be drawn from the record is that the Greenes knew of the requirements of Article X, were denied permission to make the alteration, and nonetheless persisted in installing glass block. Therefore, we reverse the trial court's judgment, declare the parties' rights under the condominium declaration, and enter judgment in favor of Montgomery Towne.
 {¶ 2} The Greenes purchased their condominium unit, one of over 300 units in the Montgomery Towne complex, on October 30, 1998. The basement windows of their unit consisted of four plate-glass windows. Prior to purchasing their unit, the Greenes reviewed the condominium declaration including Article X. That provision mandated that no owner could make any change or addition to the exterior of a unit until the plans for the alteration had been "submitted to and approved in writing" by Montgomery Towne's board of trustees.
 {¶ 3} The association had never approved glass-block windows and had challenged each previous attempt by other unit owners to install them. In April 2004, the board of trustees expressly prohibited the use of glass block under the amended terms of the Community Information Guidelines and Rules. At some time, described by Edward *Page 3 
Greene as "several years" before 2006, the Greenes nonetheless replaced their plate-glass basement windows with glass block.
 {¶ 4} Montgomery Towne requested that the Greenes remove the glass block. They refused. The association ultimately brought suit, under R.C. 5311.19, seeking an injunction requiring the Greenes to remove the glass-block windows and to replace them with plate-glass windows. The Greenes argued that Montgomery Towne's efforts to enforce the glass-block restriction were arbitrary and unreasonable.
 {¶ 5} Montgomery Towne first moved for summary judgment on March 9, 2006. The court denied the motion and referred the case to a magistrate. On July 19, 2006, the parties filed a stipulation of facts with the trial court. Then both parties moved for summary judgment. The magistrate again denied summary judgment, noting that the 2004 express glass-block prohibition might not have been in effect before the Greenes installed their glass-block windows.
 {¶ 6} After additional discovery, both parties moved again for summary judgment. The magistrate issued a decision granting summary judgment for Montgomery Towne. The magistrate noted that the Greenes' "protestation as to their lack of knowledge concerning the impropriety of installing glass blocks [rang] hollow" because the Greenes had applied for, and had been denied permission to install, glass-block windows in 2001. The Greenes filed objections to the magistrate's decision, which the trial court granted.
 {¶ 7} Montgomery Towne filed another motion for summary judgment on April 9, 2007. The Greenes again filed their motion for summary judgment on May 4, 2007. Focusing on the deposition testimony obtained by the Greenes from Aaron Taylor, a veteran police officer, the trial court announced that the use of "glass block prevents, rather than creates, safety hazards," and that "the glass block restrictions apparently serve *Page 4 
no purpose here," and the court accordingly granted the Greenes' motion for summary judgment on July 17, 2007. This appeal followed.
 {¶ 8} While we have previously questioned the wisdom of resolving declaratory-judgment actions by summary judgment, [1] the parties' election to address the issues by cross-motions for summary judgment demonstrates that both sides believed that there was no genuine issue of material fact in dispute and that the court was free to render a decision as a matter of law.[2] We review summary-judgment determinations de novo, without deference to the trial court's ruling.[3]
 {¶ 9} The function of summary judgment is to determine from the evidentiary materials whether triable factual issues exist, regardless of whether the facts are complex.[4] Summary judgment is appropriately granted when (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence viewed most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.[5] In ruling on a motion for summary judgment, however, the trial court is not permitted to "weigh the evidence before it or choose between competing inferences in reaching [its] decision."[6]
 {¶ 10} R.C. 5311.19(A) requires condominium unit owners to comply with all restrictions set forth in the declaration of condominium, the bylaws, and other *Page 5 
condominium documents.[7] A condominium association may bring an action for damages, injunctive relief, and reasonable attorney fees and costs against a unit owner for noncompliance with those restrictions.[8] R.C. 5311.19(A) also provides the means for a unit owner to block enforcement of an unreasonable restriction by bringing an action for injunctive relief.
 {¶ 11} As this court noted more than 20 years ago, a condominium "owner's freedom of action is of necessity limited by the fact that the unit is one of many units * * * that are physically and legally supported by, and supportive of, all other units and the common areas. It is not an independent, separate entity in the nature of a castle. "[9] Compliance with condominium declarations and bylaws is required under R.C. 5311.19 where the restrictions are reasonable.[10]
 {¶ 12} Ohio courts have applied a three-part test to determine if a condominium restriction is reasonable. Under this test, a reviewing court must determine (1) whether the decision or rule is arbitrary; (2) whether the decision or rule has been applied in an even-handed or discriminatory manner; and (3) whether the decision or rule was made in good faith for the common welfare of the owners and occupants of the condominium.[11] In reviewing a homeowners' association's decision, the trial court ought not to "substitute its *Page 6 
judgment for that of [the association] or weigh the various elements and considerations to be taken into account as though the court were acting de novo."[12]
 {¶ 13} We note that where a restriction is contained in a condominium declaration and was in existence prior to the purchase of a condominium unit, the reasonableness test has less relevance to our review.[13]
"Restrictions adopted with the blessing of R.C. 5311.05 require an owner to surrender certain personal choices in the interest of the common purpose. Accordingly, an owner who unilaterally disrupts the general plan because he wants a change defeats the idea and purpose of condominium living."[14]
 {¶ 14} Even with the facts construed most strongly in the Greenes' favor, the only conclusion to be drawn from the record is that they knew of the requirements of Article X, were denied permission to make the alteration, and nonetheless persisted in installing glass block. In accordance with Article X, the Greenes had submitted an "Application For Architectural Improvement" to replace their basement windows with glass-block windows in November 2000. The document included the certification that "I/we will not authorize or perform any work under this application until I/we have received written authorization to do so from the Board of Trustees." The application bore the signatures of both Edward and Priscilla Greene.
 {¶ 15} The Montgomery Towne board of trustees reviewed the application and a similar application from another association member. The board denied both *Page 7 
applications in January 2001. On January 29, 2001, Montgomery Towne's board of trustees informed the Greenes in writing that their application had been denied, stating that "[r]equest to install glass block windows in basement disapproved. Owner may replace basement windows with vinyl double paned glass windows similar to original basement window."
 {¶ 16} In their subsequent affidavits, the Greenes claimed that Priscilla had filed the application, signed both her and her husband's signatures to the document, received the notice of disapproval, and yet failed to notify her husband about it even when he began the installation of the glass block. Even if these facts were true, Edward conceded that he ordered the installation of the glass block without association approval. It is undisputed that the Greenes did not obtain prior written consent from Montgomery Towne before installing the glass-block windows, and that they made the alteration with full knowledge that they lacked permission to do so. The Greenes violated the restrictions of Article X of the condominium declaration.[15]
 {¶ 17} Since the Greenes had notice of the prior-approval restrictions of Article X, of the association's previous refusal to permit owners to use glass block, and of its specific refusal to permit them to add glass-block windows, the appropriate way to challenge the restrictions was not to act in defiance and invite legal action, but to seek a declaration that the restrictions were unreasonable under R.C. 5311.19.
 {¶ 18} Construing the evidence presented in the trial court most strongly in favor of the Greenes, we also hold that no genuine issue of material fact remains as to whether the association prohibition against glass block was made in good faith, was not arbitrary, and was applied in a uniform manner. Montgomery Towne demonstrated an interest in *Page 8 
maintaining the integrity and uniformity of its common property. In ruling on the motions for summary judgment, the trial court was not permitted to substitute its judgment for that of the association's board of trustees and determine that the use of glass block might ultimately have been more appropriate than the use of plate-glass windows.[16]
 {¶ 19} The trial court erred when it failed to grant summary judgment to the association and to enforce Montgomery Towne's reasonable restriction prohibiting glass-block windows, particularly when the unit owners had actual notice that their use of glass block had been prohibited. Therefore, we sustain Montgomery Towne's assignment of error.
 {¶ 20} App. R. 12(B) empowers an appellate court to render the judgment that a court of common pleas should have rendered. And "Section 3(B)(1)(f), Article IV of the Ohio Constitution and R.C. 2721.02 confer upon an appellate court the authority to modify a trial court's declaration of the rights and obligations of the parties to a civil action."[17]
 {¶ 21} Having established that the trial court erred to the prejudice of Montgomery Towne, that no genuine issue of material fact remained to be determined, and that Montgomery Towne was entitled to judgment as a matter of law on its claim for declaratory and injunctive relief, we reverse the trial court's judgment "and render the judgment or final order that the trial court should have rendered."[18]
 {¶ 22} Accordingly, we declare that the Greenes are in violation of the terms of the condominium declaration. They are required to remove the non complying glass-block windows. Since Montgomery Towne is entitled to "an award of court costs and reasonable attorney's fees"[19] for successfully pursuing this action, this cause is remanded to the trial *Page 9 
court for the limited purpose of determining the quantum of fees and costs due to Montgomery Towne.
Judgment accordingly.
SUNDERMANN, P.J., HILDEBRANDT and CUNNINGHAM, JJ.
[1] See, e.g., Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. Mun. Emp., AFL-CIO (1994), 93 Ohio App.3d 162, 164,638 N.E.2d 94.
[2] See Costanzo v. Nationwide Mut. Ins. Co., 161 Ohio App.3d 759,2005-Ohio-3170, 832 N.E.2d 71, ¶ 10.
[3] See Doe v. Shaffer, 90 Ohio St.3d 388, 2000-Ohio-186,738 N.E.2d 1243; see, also, Polen v. Baker, 92 Ohio St.3d 563, 564-565,2001-Ohio-1286, 752 N.E.2d 258.
[4] See Gross v. Western-Southern Life Ins. Co. (1993),85 Ohio App.3d 662, 666-667, 621 N.E.2d 412.
[5] See Civ. R. 56(C); see, also, Dresher v. Burt, 75 Ohio St.3d 280,293, 1996-Ohio-107, 662 N.E.2d 264.
[6] Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. Mun.Emp., AFL-CIO, 93 Ohio App.3d at 164, 638 N.E.2d 94, citing Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.
[7] Gall v. Mariemont Windsor Square Condominium Assn.,175 Ohio App.3d 689, 2008-Ohio-1276, 888 N.E.2d 1144, ¶ 6, citing NorthwoodsCondominium Owners' Assn. v. Arnold, 147 Ohio App.3d 343, 346,2002-Ohio-41, 770 N.E.2d 627; see, also, Georgetown Arms CondominiumUnit Owners' Assn. v. Super (1986), 33 Ohio App.3d 132, 133,514 N.E.2d 899 (injunction issued when owner installed Thermopane sliding-glass doors in place of four single-pane windows without the association's approval).
[8] R.C. 5311.19(A).
[9] River Terrace Condominium Assn. v. Lewis (1986),33 Ohio App.3d 52, 55, 514 N.E.2d 732.
[10] See Northwoods Condominium Owners' Assn. v. Arnold,147 Ohio App.3d 343, 346, 2002-Ohio-41, 770 N.E.2d 627; see, also, Monday VillasProperty Owners Assn. v. Barbe (1991), 75 Ohio App.3d 167, 171,598 N.E.2d 1291; Worthinglen Condominium Unit Owners' Assn. v. Brown (1989),57 Ohio App.3d 73, 566 N.E.2d 1275; River Terrace Condominium Assn. v.Lewis, 33 Ohio App.3d at 57, 514 N.E.2d 732.
[11] See Worthinglen Condominium Unit Owners' Assn. v. Brown,57 Ohio App.3d at 76, 566 N.E.2d 1275; see, also, River Terrace CondominiumAssn. v. Lewis, 33 Ohio App.3d at 57, 514 N.E.2d 732.
[12] River Terrace Condominium Assn. v. Lewis, 33 Ohio App.3d at 57,514 N.E.2d 732.
[13] The Bluffs of Wildwood Homeowners' Assn., Inc. v. Dinkel (1994),96 Ohio App.3d 278, 282, 644 N.E.2d 1100, jurisdictional motion overruled (1994), 71 Ohio St.3d 1421, 642 N.E.2d 386 (association entitled to permanent injunction against parking pickup truck in condominium, where restriction appeared in declaration and was enforced evenhandedly by association).
[14] See Sprunk v. Creekwood Condominium Unit Owners' Assn. (1989),60 Ohio App.3d 52, 53, 573 N.E.2d 197, citing Georgetown Arms CondominiumUnit Owners' Assn. v. Super, 33 Ohio App.3d 132, 514 N.E.2d 899.
[15] See Georgetown Arms Condominium Unit Owners' Assn. v. Super,33 Ohio App.3d at 133, 514 N.E.2d 899.
[16] See River Terrace Condominium Assn. v. Lewis,33 Ohio App.3d at 57, 514 N.E.2d 732.
[17] Powers v. Meyers (1995), 101 Ohio App.3d 504, 513,655 N.E.2d 1358 (internal citations omitted).
[18] App. R. 12(B).
[19] R.C. 5311.19(A). *Page 1